Achchana Ranasinghe (337416)
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000 | F: (855) 582-5297
ac@jtblawgroup.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KYLIE HOWELL**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SPARE TIME, INC. d/b/a NORTH BOWL**, and **SOUTH BOWL, INC.**,<br><br>Defendants. | Case No.<br><br>COLLECTIVE AND CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

**<u>COLLECTIVE AND CLASS ACTION COMPLAINT</u>**

Plaintiff Kylie Howell ("Plaintiff" or "Howell"), individually and on behalf of all others similarly situated, by and through her attorneys at Brown, LLC, brings this Collective and Class Action Complaint against Defendants Spare Time, Inc. d/b/a North Bowl ("Spare Time" or "North Bowl") and South Bowl, Inc. ("South Bowl") (collectively, "Defendants"), and alleges as follows upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters:

**<u>INTRODUCTION</u>**

1. Plaintiff brings this action to recover minimum-wage deficiencies, unlawfully retained tips, and unpaid event compensation arising from Defendants' common compensation practices for bartenders, servers, support staff, and other tipped or event-service employees at the affiliated North Bowl and South Bowl venues in Philadelphia, Pennsylvania.

2. Plaintiff asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., individually and on behalf of a collective pursuant to 29 U.S.C. § 216(b), and under the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101 et seq., and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. § 260.1 et seq., individually and on behalf of a Pennsylvania class under Fed. R. Civ. P. 23.

3. Defendants operate related bowling, restaurant, bar, and private-event businesses and used common or overlapping management, event-compensation, accounting, and payroll practices for employees who worked at North Bowl and South Bowl.

4. Defendants compensated tipped guest-service employees through direct cash wages, customer tips, and, for private events, additional event compensation. For tipped guest-service employees paid a direct cash wage below the applicable minimum wage, Defendants relied on tips to satisfy part of their minimum-wage obligation. Spare Time paid Plaintiff $4.50 per hour under that compensation structure.

5. Defendants used common or overlapping onboarding, payroll, tip-pooling, and event-compensation practices for tipped guest-service employees. Those common processes governed the notices, tip-credit treatment, tip-pool participation, and event compensation applicable to tipped guest-service employees, including Plaintiff.

6. Defendants administered private-event gratuities through a system under which managers determined employee allocations, managers and supervisors received portions of the money, office or event-booking personnel received portions even when they did not work the event, and employees were not told in advance the formula or required contribution governing the pool.

7. Defendants also maintained a written Event Service Fee Policy that promised employees defined event compensation by role and event type, stated that the compensation was in addition to employees' normal hourly wages, and required payment through Defendants' biweekly payroll.

8. Through these common practices, Defendants failed to ensure that tipped and event-service employees received all tips and event compensation due to them and, for employees paid a direct cash wage below the applicable minimum wage, failed to satisfy the conditions required to take a tip credit.

9. Plaintiff seeks recovery of the tip credit taken and tips unlawfully kept, minimum-wage deficiencies, unpaid earned event compensation, statutory liquidated damages where authorized, reasonable attorneys' fees and costs, collective notice, Rule 23 class certification, and all other lawful relief without duplicative recovery.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's PMWA and PWPCL claims and the claims of the proposed Pennsylvania Class because those claims arise from the same tip-credit, tip-distribution, event-compensation, payroll, and recordkeeping practices as the FLSA claims and form part of the same case or controversy.

12. This Court has personal jurisdiction over Defendants because both are Pennsylvania corporations, both maintain their principal and registered offices in Pennsylvania, and both operated the Philadelphia venues and compensation practices at issue.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)-(2) and (c)(2) because Defendants reside in this District for venue purposes and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Philadelphia County, Pennsylvania.

14. The PMWA and PWPCL apply because Plaintiff and the proposed Pennsylvania Class Members performed the work at issue in Pennsylvania and suffered the alleged wage and tip underpayments there.

15. Plaintiff is not subject to an agreement requiring her wage-and-hour claims against Defendants to be resolved through private arbitration rather than in court.

16. This action is not subject to compulsory arbitration under L. Civ. R. 53.2(3)(A) because this collective and class action seeks notice, certification, declaratory relief, and other nonmonetary relief in addition to damages.

## PARTIES

17. Plaintiff Kylie Howell presently resides in Tulsa, Oklahoma. During the relevant period, she resided and worked in Philadelphia, Pennsylvania.

18. Spare Time directly employed Plaintiff from approximately August 1, 2025, through approximately August 2, 2026. During that period, on information and belief, South Bowl employed or jointly employed Plaintiff when she performed private-event work at South Bowl.

19. Plaintiff worked primarily as a bartender at North Bowl and also worked one or more private events at South Bowl.

20. Plaintiff's primary duties included preparing and serving beverages, interacting with customers, working private events, setting up and breaking down event service, closing customer tabs when assigned, cleaning, and related guest-service work.

21. Defendant Spare Time, Inc. is an active Pennsylvania domestic business corporation formed on July 27, 2004, with a principal and registered office at 41 Conshohocken State Road, Apartment 508, Bala Cynwyd, Pennsylvania 19004.

22. Spare Time owns and operates North Bowl under the active Pennsylvania fictitious name "North Bowl" at 909-915 North Second Street, Philadelphia, Pennsylvania 19123.

23. Plaintiff's wage statements identify her employer as "Spare Time Inc - North Bowl" and identify North Bowl as her paygroup, department, and location.

24. Defendant South Bowl, Inc. is an active Pennsylvania domestic business corporation formed on September 6, 2011, with the same principal and registered office as Spare Time.

25. Spare Time and South Bowl have the same president, vice president, secretary, treasurer, and governors.

26. Defendants operate affiliated Philadelphia bowling, restaurant, bar, and private-event businesses known as North Bowl and South Bowl.

27. Defendants' written Event Service Fee Policy expressly applied to "North Bowl/South Bowl employees" and prescribed how event compensation would be paid to employees working at both venues.

28. Defendants used common or overlapping personnel to administer private-event compensation and payroll for North Bowl and South Bowl.

29. Plaintiff's South Bowl event work was paid through the same payroll and on the same Spare Time wage statements as her North Bowl work.

30. On information and belief, Defendants jointly determined or controlled the pay practices, tip and event-compensation policies, payroll administration, event assignments, manager authority, and employment records applicable to Plaintiff and the covered employees.

31. At all relevant times, Defendants were employers, individually and/or jointly, and Plaintiff and the covered employees were employees within the meaning of 29 U.S.C. § 203(d), (e), and (g).

32. At all relevant times, Defendants were employers, individually and/or jointly, and Plaintiff and the Pennsylvania Class Members were employees within the meaning of 43 P.S. § 333.103(f)-(h).

33. At all relevant times, Defendants were employers within the meaning of 43 P.S. § 260.2a, and, as alleged below, the event compensation payable to Plaintiff and the Pennsylvania Class Members constituted wages within the meaning of that section.

34. The precise allocation of employer functions between Defendants is contained in their payroll, personnel, scheduling, event-booking, accounting, corporate, and management records and is subject to discovery.

## FACTUAL ALLEGATIONS[1]

### Defendants' Business and FLSA Coverage

35. Defendants provide bowling, food, beverage, bar, entertainment, and private-event services to the public through North Bowl and South Bowl in Philadelphia.

36. Private events are a recurring part of Defendants' business. The venues hosted approximately ten private events per week during busy periods and approximately two or three per week during slower periods.

[1] The allegations in this Complaint, unless otherwise specified, refer to the three years preceding the filing of this action through the date of final judgment.

37. The affiliated operation employed approximately 51 to 100 employees. The precise number, positions, work locations, and dates of employment of covered employees are contained in Defendants' records.

38. On information and belief, at all relevant times Defendants constituted an enterprise or enterprises engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), with annual gross volumes of sales made or business done of not less than $500,000.

39. Tipped guest-service employees handled food, beverages, equipment, point-of-sale systems, payment cards, and other goods and materials that had moved in interstate commerce.

40. Defendants used the Toast point-of-sale and payroll systems to record hours, tips, gratuities, wages, deductions, and direct deposits and to process or document customer payments and private-event compensation.

41. The covered employees, including Plaintiff, were therefore employed by an enterprise or enterprises engaged in commerce or in the production of goods for commerce and were covered by the FLSA.

<u>Common Compensation Practices for Tipped and Event Employees</u>

42. Defendants employed bartenders, servers, support staff, and other guest-service employees who customarily received customer tips.

43. Bartenders, servers, support staff, and other tipped guest-service employees, including Plaintiff, customarily received customer tips.

44. Defendants compensated tipped guest-service employees through hourly wages, tips, and, for private events, additional event compensation. Defendants' payroll records identify the

direct cash wages paid to tipped guest-service employees; Plaintiff's wage statements identify a $4.50 hourly rate and the job title "Bartender - North Bowl."

45. Defendants' ordinary bar-service practices permitted tipped guest-service employees to receive cash tips directly. For private events, Defendants collected, controlled, allocated, and paid customer-added gratuities and event-service compensation through management, accounting, point-of-sale, and payroll systems used for event employees.

46. Defendants' payroll system used separate earnings labels including "REGULAR," "Tips Paid," and "Gratuity." Defendants' written Event Service Fee Policy directed that event-service-fee compensation for North Bowl and South Bowl employees be paid on the "gratuity" line of their wage statements.

47. Defendants' event-booking personnel arranged private events and established a mandatory service charge before the event through communications and contracts with customers.

48. At the end of some events, a customer made a final payment through Defendants' point-of-sale system and could voluntarily add an additional gratuity on a separate tip line.

49. The amount of those additional gratuities, and whether to leave them at all, were determined voluntarily by the customer rather than compelled by Defendants.

50. Managers sometimes closed event payments under a manager point-of-sale number rather than under the bartender or server who performed the service.

51. Defendants then possessed, recorded, or controlled the voluntary additional gratuities before determining what amounts, if any, would be distributed to event employees.

52. Managers or supervisors decided how private-event gratuities and related event funds would be divided among employees.

53. The allocation formula could vary from event to event, and employees did not know before an event what percentage or amount they would receive.

54. Defendants permitted managers or supervisors who directed event work, assigned employees to events, or exercised other management authority to receive portions of the event gratuities or event pool.

55. Defendants also permitted office or event-booking employees to receive portions of event gratuities or event funds, including when those employees did not work the event or directly provide the event service for which the customer left the tip.

56. Defendants controlled the records showing the customer tip, the separate mandatory service charge, the identities and positions of recipients, the allocation formula, and the amounts distributed through payroll or otherwise. Those records permit the distribution of customer tips and event compensation to be evaluated across employees and events.

57. Defendants used overlapping labels such as "gratuity," "service fee," and "extra service fee" when administering customer-added tips and employer-controlled event compensation, making the underlying source and distribution of event funds dependent on Defendants' point-of-sale, accounting, allocation, and payroll records.

58. These practices were centrally administered and applied to private events at North Bowl and South Bowl.

<u>Invalid Tip Credit and Missing Tip-Pool Notice</u>

59. The federal and Pennsylvania minimum wage during the relevant period was $7.25 per hour.

60. For tipped guest-service employees whom Defendants paid a direct cash wage below $7.25 per hour, Defendants relied on a tip credit to satisfy the balance of the minimum wage. Spare

Time paid Plaintiff $4.50 per hour directly and relied on her tips to satisfy the balance of the minimum wage.

61. On information and belief, Defendants used common or substantially similar onboarding and payroll processes for tipped guest-service employees. Defendants' onboarding, payroll, and tip-credit records identify which employees were paid a tip-credit wage and what tip-credit or tip-pool information Defendants provided to them.

62. Before taking a tip credit as to Plaintiff, Defendants did not inform her of the direct cash wage, the amount of the tip credit, the limitation that the credit could not exceed tips actually received, the requirement that she retain all tips except through a lawful pool, or the fact that no tip credit could apply unless Defendants first provided that information. Defendants also did not provide Plaintiff the written tip-pooling notice required by Pennsylvania law.

63. The Event Service Fee Policy did not state the direct cash wage, the amount of any tip credit, the required tip-pool contribution, or the statutory conditions under which Defendants could claim the right to pay less than the minimum wage.

64. Defendants also required or permitted tip-pool participation by managers, supervisors, and employees who did not customarily and regularly receive tips, independently invalidating the tip credit.

65. Defendants maintained or were required to maintain records identifying tipped employees, the amount of tip credit taken, the names and positions of tip-pool participants, the amounts distributed to each participant, and the hours and wages paid.

66. Whether Defendants provided the required notices to other employees for whom they claimed a tip credit, and whether the employer-administered pool included prohibited participants,

can be determined through common onboarding, policy, payroll, job-title, scheduling, and tip-distribution records.

<u>Defendants' Written Event Service Fee Policy</u>

67. Defendants maintained a written policy titled "Event Service Fee Policy" that governed compensation for North Bowl and South Bowl employees who worked private events.

68. The policy stated that all event service fees were property of Spare Time and would be paid to North Bowl and South Bowl employees in biweekly paychecks on the "gratuity" line of their wage statements.

69. The policy stated that employees would receive a breakdown of service fees for each event worked on payday and generally capped individual event service-fee payments at $200 unless the owners authorized more based on employee performance.

70. For venue buyouts and Loft rentals, the policy promised servers and bartenders $17 per hour for all event hours and support staff $10 per hour for all scheduled event hours.

71. For other lane-party formats, the policy promised specified hourly event payments ranging from $8 to $15 per hour depending on the employee's role, event location, bar arrangement, event duration, and setup or breakdown time.

72. The policy expressly stated: "This money is in addition to your normal hourly rate."

73. The policy also stated that managers or supervisors overseeing an event could receive up to eight percent of the total service fee, "inclusive of extra (non-cash) service fees left by the customer."

74. The policy directed a manager or supervisor to divide any additional amount left by a customer based on customer instructions and staff performance, with amounts over $200 added to employee paychecks.

75. By its terms and through Defendants' regular payroll practice, the policy established event compensation that employees earned by performing assigned private-event work in addition to their ordinary hourly wages.

76. The policy required event-by-event breakdowns and prescribed event compensation by role and event type. Defendants' event, scheduling, allocation, and payroll records can determine whether those common terms were followed for employees who worked private events.

77. Records from a private event on January 10, 2026, illustrate the operation of these common practices. The customer left a voluntary tip in addition to a separate mandatory service fee, and a contemporaneous allocation record identified tipped event employees, office personnel, and salaried managers as recipients or proposed recipients of the event funds. After employees questioned the distribution, including another bartender who identified a shortfall, Spare Time issued a corrective payment.

<u>Defendants' Records, Knowledge, and Willfulness</u>

78. On information and belief, Defendants possessed private-event contracts, customer bills, signed receipts, point-of-sale records, event rosters, schedules, payroll records, tip and gratuity ledgers, manager allocations, wage statements, and communications capable of identifying the tips and event compensation received and the amounts distributed to each employee or retained by Defendants.

79. On information and belief, Defendants knew which employees worked each private event, their roles and hours, the mandatory service charge, any customer-added gratuity, the amounts allocated by management, and the amounts paid through payroll.

80. Employees questioned unexplained event-compensation shortfalls and the participation of managers or office personnel in event distributions, including complaints by at least two bartenders concerning one private event.

81. Defendants continued to administer their event-compensation practices after employee complaints and a corrective payment.

82. Defendants' written policy expressly contemplated managers or supervisors receiving portions of amounts left by customers, including amounts characterized as "extra (non-cash) service fees." To the extent those additional amounts constituted voluntary customer tips, federal law prohibited Defendants from allowing managers or supervisors to keep any portion of them.

83. On information and belief, Defendants failed to make, keep, or preserve records sufficient to establish that all customer tips were fully and promptly distributed through lawful arrangements and that all compensation due under the Event Service Fee Policy was paid.

84. Defendants' violations were willful because, as alleged, they maintained and administered the challenged written policy and payroll system, controlled the tip and event distributions, received employee complaints identifying a specific shortfall, and issued a later corrective payment without correcting the broader practices.

## **COLLECTIVE ACTION ALLEGATIONS**

85. Plaintiff brings Counts I and II as collective actions under 29 U.S.C. § 216(b) on behalf of herself and the FLSA Collective.

86. The FLSA Collective is defined as:

> *All hourly-paid bartenders, servers, support staff, and other tipped guest-service employees employed by one or both Defendants in Pennsylvania during the three years preceding the filing of this action through final judgment.*

87. Plaintiff reserves the right to amend the collective definition based on discovery concerning Defendants' payroll codes, job titles, work locations, tip-credit records, tip-pool participants, event assignments, and common pay practices.

88. Plaintiff and the FLSA Collective Members are similarly situated because they worked in hourly-paid tipped guest-service positions at Defendants' affiliated North Bowl and South Bowl venues and were subject to Defendants' common or overlapping practices concerning tipped compensation, private-event gratuities, tip pooling, payroll administration, and recordkeeping.

89. The challenged compensation system included the employer-administered handling and allocation of private-event gratuities and, for employees paid a direct cash wage below the federal minimum wage, Defendants' tip-credit practices. Defendants' records identify which components of the compensation system applied to each FLSA Collective Member.

90. Questions common to the FLSA Collective include whether Defendants kept employee tips; allowed managers or supervisors to receive portions of employee tips; required sharing with employees who did not customarily and regularly receive tips; gave the required advance tip-credit information to employees for whom a tip credit was claimed; notified affected employees of required pool contributions; fully and promptly distributed tips; maintained required records; and acted willfully.

91. Defendants' liability can be established through common evidence, including written policies, onboarding records, tip-credit notices, payroll records, tip-pool participant records, point-of-sale data, event contracts, customer receipts, event rosters, manager allocation sheets, and accounting communications.

92. Plaintiff's claims are similar to those of the FLSA Collective Members because Defendants subjected her, as an hourly-paid tipped bartender, to the same categories of tipped-

compensation, private-event, payroll, and recordkeeping practices challenged on behalf of the Collective.

93. The FLSA Collective Members are identifiable from objective job-title, work-location, payroll, and employment-date criteria contained in Defendants' records.

94. Defendants can provide the names, last known addresses, personal email addresses, telephone numbers, job titles, work locations, dates of employment, pay rates, and relevant payroll and event records of the FLSA Collective Members, and notice should issue to permit them to file written consents to join this action.

## CLASS ACTION ALLEGATIONS

95. Plaintiff brings Counts III and IV under Fed. R. Civ. P. 23(a), (b)(3) on behalf of herself and the Pennsylvania Class.

96. The Pennsylvania Class is defined as:

> *All hourly-paid bartenders, servers, support staff, and other tipped guest-service employees employed by one or both Defendants in Pennsylvania during the three years preceding the filing of this action through final judgment.*

97. The Pennsylvania Class is ascertainable from objective criteria in Defendants' personnel, payroll, work-location, job-title, pay-rate, event-roster, scheduling, time, and employment-date records.

98. On information and belief, the proposed Class is sufficiently numerous that joinder is impracticable. The affiliated operation employed approximately 51 to 100 employees, Defendants hosted recurring private events throughout the year, and multiple employees staffed each event. The precise number of Class Members is presently unknown because Defendants control the personnel, payroll, and event records needed to identify them and can be determined through discovery.

99. Questions of law and fact common to the Pennsylvania Class include Defendants' compensation practices for tipped guest-service employees; Defendants' payroll and recordkeeping practices; the administration of tips and private-event compensation; whether Defendants maintained common policies governing tipped and event employees; and whether Defendants' records permit determination of the compensation paid and owed to Class Members.

100. Additional common questions applicable to Pennsylvania Class Members paid a direct cash wage below $7.25 per hour include whether Defendants provided the written notice required by 34 Pa. Code § 231.112(b); permitted managers, supervisors, or non-tipped employees to participate in the pool contrary to 34 Pa. Code § 231.112(a); required employees to surrender tips; maintained required records; and owe the difference between the minimum wage and the direct cash wage paid.

101. Additional common questions applicable to Pennsylvania Class Members who worked private events include whether the Event Service Fee Policy and Defendants' regular compensation practices established earned event wages; whether Defendants failed to provide promised event breakdowns; whether Defendants failed to pay the event rates and setup and breakdown compensation required by the compensation arrangement; and the appropriate measure of unpaid wages and statutory relief.

102. Plaintiff's claims are typical of the Pennsylvania Class because Defendants subjected her, as an hourly-paid tipped bartender who was paid a direct cash wage below the applicable minimum wage and worked private events, to the same tip-credit, tip-pooling, event-compensation, and payroll practices challenged on behalf of the Class.

103. Plaintiff will fairly and adequately protect the interests of the Pennsylvania Class. She has no interests antagonistic to the Class and has retained counsel experienced in wage-and-hour and complex employment litigation.

104. Common questions predominate over individualized questions because liability turns principally on Defendants' standardized policies and centralized records concerning direct cash wages, onboarding and written notices, tip-pool participants, customer tips, event classifications, event rates, hours, manager allocations, and payroll distributions.

105. The amount owed to individual Class Members can be calculated from Defendants' payroll, scheduling, event, point-of-sale, and allocation records by applying the common statutory minimum-wage requirements and written event-pay formulas.

106. A class action is superior to individual actions because individual wage and tip losses may be too small to justify separate litigation, employees may fear retaliation or lack access to Defendants' records, common adjudication will conserve judicial and party resources, and class treatment will produce consistent resolution of the common issues.

107. Plaintiff seeks certification of the Pennsylvania Class, appointment as class representative, and appointment of her counsel as class counsel.

## COUNT I

**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 203(m)(2)(B)**
**Unlawful Keeping and Distribution of Employee Tips**
(On Behalf of Plaintiff and the FLSA Collective)

108. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

109. Plaintiff and the FLSA Collective Members are or were employees covered by the FLSA, and Defendants are or were their employers within the meaning of the FLSA.

110. Under 29 U.S.C. § 203(m)(2)(B), an employer may not keep tips received by its employees for any purpose, including by allowing managers or supervisors to keep any portion of employees' tips, regardless of whether the employer takes a tip credit.

111. Under 29 C.F.R. §§ 531.52 and 531.54, employee tips are the property of employees, an employer may not receive any portion of those tips, managers and supervisors may not keep other employees' tips, and tips administered through a pool must be fully and promptly distributed.

112. Defendants violated these provisions by retaining or diverting portions of voluntary customer tips, failing to fully and promptly distribute those tips, and allowing managers or supervisors to receive portions of tips left for tipped event employees.

113. For FLSA Collective Members for whom Defendants took a tip credit, distributions to office or event-booking employees who did not customarily and regularly receive tips further rendered the employer-administered pool unlawful.

114. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), and Defendants cannot establish the good faith or reasonable grounds required by 29 U.S.C. § 260 to avoid liquidated damages.

115. Under 29 U.S.C. § 216(b), Plaintiff and those FLSA Collective Members affected by Defendants' violation of 29 U.S.C. § 203(m)(2)(B) are entitled to recover the sum of any tip credit taken by Defendants and all tips unlawfully kept, plus an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs.

**COUNT II**

**Violation of the Fair Labor Standards Act**
**29 U.S.C. §§ 203(m)(2)(A) and 206**
**Failure to Pay the Minimum Wage Through an Invalid Tip Credit**
(On Behalf of Plaintiff and the FLSA Collective)

116. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

117. Plaintiff and the FLSA Collective Members are or were employees covered by the FLSA, and Defendants are or were their employers within the meaning of the FLSA.

118. Under 29 U.S.C. § 206(a)(1)(C), Defendants were required to pay Plaintiff and those FLSA Collective Members for whom Defendants claimed a tip credit at least $7.25 per hour unless Defendants satisfied every condition for taking that credit.

119. Under 29 U.S.C. § 203(m)(2)(A) and 29 C.F.R. § 531.59(b), before taking a tip credit Defendants were required to inform affected employees of the direct cash wage, the additional amount claimed as a tip credit, the actual-tip limitation, the requirement that employees retain all tips except through a lawful pool, and the fact that the tip credit would not apply unless the employees had been informed.

120. Those conditions also prohibited Defendants from requiring tipped employees to share tips with managers, supervisors, the employer, or employees who did not customarily and regularly receive tips.

121. Defendants used common or substantially similar onboarding and tip-credit practices for FLSA Collective Members paid a tip-credit wage. Defendants did not provide Plaintiff the required advance tip-credit information, and their common onboarding, payroll, and notice records will establish whether the same omission affected other Collective Members. Defendants also administered an employer-controlled tip pool that, as alleged, included prohibited participants.

122. Defendants paid Plaintiff and, on information and belief, other FLSA Collective Members for whom Defendants claimed a tip credit direct cash wages below $7.25 per hour and relied on tips to satisfy part of their minimum-wage obligation.

123. Defendants therefore owe Plaintiff and those FLSA Collective Members for whom Defendants improperly claimed a tip credit the difference between the applicable minimum wage and the direct cash wage paid for all covered hours.

124. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), and Defendants cannot establish the good faith or reasonable grounds required by 29 U.S.C. § 260 to avoid liquidated damages.

125. Under 29 U.S.C. § 216(b), Plaintiff and those FLSA Collective Members for whom Defendants improperly claimed a tip credit are entitled to recover unpaid minimum wages, an additional equal amount as liquidated damages, reasonable attorneys' fees and costs, and all other relief authorized by law.

## COUNT III

**Violation of the Pennsylvania Minimum Wage Act**
**43 P.S. § 333.101 *et seq.* and 34 Pa. Code ch. 231**
**Failure to Pay the Minimum Wage Through an Invalid Tip Credit**
(On Behalf of Plaintiff and the Pennsylvania Class)

126. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

127. Plaintiff and those Pennsylvania Class Members whom Defendants paid a direct cash wage below the applicable minimum wage are or were employees covered by the PMWA, and Defendants are or were their employers within the meaning of 43 P.S. § 333.103.

128. The PMWA required Defendants to pay Plaintiff and those Pennsylvania Class Members whom Defendants paid a direct cash wage below the applicable minimum wage the

applicable minimum wage for all hours worked unless Defendants satisfied every condition for taking a tip credit.

129. Under 43 P.S. § 333.103(d), the tip-credit provisions did not apply unless employees were informed of the provisions, retained all tips except through a pool among employees who customarily and regularly received tips, and did not surrender gratuities to Defendants to be used as wages.

130. Under 34 Pa. Code § 231.112(b), Defendants were required to provide written notice of a tip-pooling arrangement at or before making an employment offer or at least one pay period before the arrangement took effect.

131. Defendants did not provide Plaintiff the required written notice. Defendants' common onboarding, payroll, and notice records will establish whether the same omission affected other Pennsylvania Class Members. Defendants also administered a pool that, as alleged, included managers, supervisors, and employees who did not customarily and regularly receive tips.

132. Defendants paid or caused Plaintiff and those Pennsylvania Class Members for whom Defendants claimed a tip credit to be paid direct cash wages below the applicable minimum wage.

133. Defendants therefore owe Plaintiff and those Pennsylvania Class Members for whom Defendants improperly claimed a tip credit the full amount of the applicable minimum wage less the amounts actually paid directly by Defendants.

134. Under 43 P.S. § 333.113, Plaintiff and those Pennsylvania Class Members for whom Defendants improperly claimed a tip credit are entitled to recover their minimum-wage deficiencies, reasonable attorneys' fees and costs, and all other relief authorized by law.

## COUNT IV

**Violation of the Pennsylvania Wage Payment and Collection Law**
**43 P.S. § 260.1 *et seq*.**
**Failure to Pay Earned Event Compensation**
(On Behalf of Plaintiff and the Pennsylvania Class)

135. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

136. Defendants' Event Service Fee Policy, event assignments, and regular payroll practices established an employment compensation arrangement under which Plaintiff and those Pennsylvania Class Members who worked private events earned specified event compensation in addition to their normal hourly wages.

137. The promised event compensation constituted "wages" within the meaning of 43 P.S. § 260.2a because it was earnings determined by time, task, role, event type, or another method of calculation.

138. Under 43 P.S. § 260.3, Defendants were required to pay all earned event wages on their designated regular paydays within the applicable payment period.

139. Defendants failed to pay Plaintiff and those Pennsylvania Class Members who worked private events all compensation earned under the written event-pay rates, setup and breakdown provisions, and Defendants' regular event-compensation practices.

140. Defendants also failed to provide the event-by-event breakdowns promised by the policy, preventing employees from determining whether the wages paid through the "Gratuity" line matched the wages earned for each event.

141. Defendants' event and payroll records, including a corrective payment issued after employees questioned an event distribution, provide representative evidence that earned event compensation was not always paid on the regular payday.

142. Under 43 P.S. § 260.9a(a)-(b), Plaintiff may maintain this action on behalf of herself and other similarly situated employees to recover unpaid wages and liquidated damages.

143. To the extent the statutory conditions are satisfied, Plaintiff and those Pennsylvania Class Members who worked private events are entitled under 43 P.S. § 260.10 to liquidated damages equal to twenty-five percent of the wages due or $500, whichever is greater.

144. Under 43 P.S. § 260.9a(f), Plaintiff and those Pennsylvania Class Members who worked private events are entitled to reasonable attorneys' fees and costs in addition to any judgment awarded.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the FLSA Collective and Pennsylvania Class, respectfully requests that the Court:

A. Designate this action as an FLSA collective action under 29 U.S.C. § 216(b);

B. Authorize notice to members of the FLSA Collective, direct Defendants to produce their names and contact information, and permit them to join by filing written consents with the Court;

C. Certify the Pennsylvania Class under Fed. R. Civ. P. 23(a), (b)(3);

D. Appoint Plaintiff as representative of the FLSA Collective and Pennsylvania Class;

E. Appoint Plaintiff's counsel as counsel for the FLSA Collective and Pennsylvania Class;

F. Declare that Defendants violated the FLSA, PMWA, and PWPCL as alleged;

G. Award Plaintiff and those FLSA Collective Members affected by Defendants' violation of 29 U.S.C. § 203(m)(2)(B) the sum of any tip credit taken by Defendants and all tips unlawfully kept, together with an additional equal amount as liquidated damages under 29 U.S.C. § 216(b), without duplicative recovery;

H. Award Plaintiff and those FLSA Collective Members for whom Defendants improperly claimed a tip credit all unpaid minimum wages and an additional equal amount as liquidated damages under the FLSA;

I. Award Plaintiff and those Pennsylvania Class Members for whom Defendants improperly claimed a tip credit all minimum-wage deficiencies authorized by the PMWA;

J. Award Plaintiff and those Pennsylvania Class Members who worked private events all unpaid earned event compensation and liquidated damages where authorized by the PWPCL;

K. Award reasonable attorneys' fees and costs under the FLSA, PMWA, and PWPCL;

L. Award pre-judgment and post-judgment interest to the extent permitted by law;

M. Prevent duplicative recovery for the same wage or tip injury; and

N. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to U.S. Const. amend. VII and Fed. R. Civ. P. 38, 39, Plaintiff demands a trial by jury on all issues so triable, individually, on behalf of the FLSA Collective under 29 U.S.C. § 216(b), and on behalf of the putative Pennsylvania Class under Fed. R. Civ. P. 23.

Dated: September 18, 2026

Respectfully submitted,

**BROWN, LLC**

/s/ *Achchana Ranasinghe*
Achchana Ranasinghe (337416)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000 | F: (855) 582-5297
ac@jtblawgroup.com

*Attorneys for Plaintiff*